**UNITED STATES of America,
Plaintiff, Appellee,**

v.

**CERTAIN LAND LOCATED IN the
COUNTY OF BARNSTABLE, etc.,
et al., Defendants, Appellees.**

**Appeal of Grace E. BESSAY,
Defendant.**

**No. 88–2029.**

United States Court of Appeals,
First Circuit.

Heard May 4, 1989.

Decided Nov. 17, 1989.

Jeffrey B. Axelrod, with whom Cynthia L. Amara, Gregor I. McGregor, McGregor, Shea & Doliner, P.C., William P. Homans, Jr., and Homans, Hamilton, Dahmen & Marshall, Boston, Mass., were on brief, for appellant.

David C. Shilton, Appellate Staff, Land & Natural Resources Div., Washington, D.C., with whom Donald A. Carr, Acting Asst. Atty. Gen., Jeremiah T. O'Sullivan, U.S. Atty., Nicholas C. Theodorou, Asst. U.S. Atty., Boston, Mass., Jacques B. Gelin, Maria A. Iizuka, Dept. of Justice, Washington, D.C., and Robin Lepore, Office of Sol., Dept. of Interior, Boston, Mass., were on brief, for U.S.

Before BOWNES and TORRUELLA, Circuit Judges, and RE,* Judge.

RE, Judge:

Defendant-appellant, Grace E. Bessay, appeals from a judgment of the United States District Court of the District of Massachusetts which held that her "cottage" was not "improved property," and, therefore, was not exempt from condemnation under the Cape Cod National Seashore Act, 16 U.S.C. § 459b et seq. (1982) (the Act). The district court concluded that, "[f]irst,

* The Honorable Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation.

the cottage does not qualify as a one-family dwelling[,] [and] [s]econd, the evidence is insufficient to establish that the same person owned both the cottage and land on which it rested as of September 1, 1959." *United States v. Certain Land Located in the County of Barnstable*, No. 67–988–N, slip op. at 6 (D.Mass. Sept. 15, 1988).

The question presented on this appeal is whether the cottage owned by Bessay is "improved property" within the meaning of the Act, and, therefore, exempt from condemnation.

Since we hold that the district court correctly held that Bessay's cottage was not "improved property" because it did not qualify as a "one-family dwelling," we affirm. Hence, it is unnecessary to decide the issue of the date of ownership of the cottage and the land.

### BACKGROUND

This case is one of a series that resulted from the 1967 condemnation of 251 acres of land in Provincetown, Massachusetts, pursuant to the Act, by the United States Department of the Interior. It traces its origins to a dispute between Andrew Fuller, Bessay's predecessor in interest, and adjoining landowners, who are referred to as the Beede Group. Fuller claimed ownership of a certain structure or "shack" and the surrounding land through the adverse possession of his predecessor in interest, Dorothy Fearing. On January 30, 1978, the Beede Group filed a petition for a determination of title, requesting a finding that they owned the entire 251 acres in question.

The District Court for the District of Massachusetts issued an order "declaring the Beedes to be seised and possessed of a good title to the entire tract in fee simple." *United States v. Certain Land Located in the County of Barnstable*, 491 F.Supp. 1252, 1256 (D.Mass.1980). The court also declared that "Mr. Fuller ha[d] failed to show that the Fearings acquired a good title by adverse possession, and ...[,] [therefore,] Fuller ha[d] no title to any land on the locus and owns only the shack itself." *Id.* at 1257 (citations omitted).

The executrix of Fuller, Grace Bessay, appealed to this court, and we reversed on the question of adverse possession. We held that "[t]he Beedes were not only not the true owners, they could not even claim prior constructive possession of the lot.... Bessay, on the other hand, ha[d] possessory title tracing back through Fuller to Dorothy Fearing...." *United States v. Certain Land Located in the County of Barnstable*, 674 F.2d 90, 95 (1st Cir.1982). On that appeal, we declined to "reach any claim against the government on account of the shack or lot being 'improved property,'" and remanded the case to the district court. *Id.* at 96.

On remand, the district court made certain determinations as to deed measurements and ownership of the land. Most pertinent here is its finding "that the cottage owned by Grace Bessay does not constitute 'improved property' under the Cape Cod National Seashore Act and is therefore subject to condemnation by the government." *Certain Land Located in the County of Barnstable*, No. 67–988–N, slip op. at 9. In the present case, Bessay appeals only that portion of the decision of the district court which relates to the "improved property" exemption under the Act.

### DISCUSSION

▮ Because the increasing popularity of Cape Cod threatened to jeopardize the historic and scenic integrity of the area, in 1961, Congress established the Cape Cod National Seashore Act, 16 U.S.C. § 459b et seq. (1982), to ensure the preservation of the region. Rather than exclude all persons from owning or living on the land within the seashore, persons who had owned homes in the area for a certain period of time were permitted to remain.

In pertinent part, the Act provides that the authority of the Secretary of the Interior to acquire property in the Cape Cod region shall:

> (1) ... *be suspended with respect to all improved property located within such area* in all of the towns referred to

in section 459b of this title for one year following August 7, 1961.

(2) Thereafter *such authority shall be suspended with respect to all improved property located within such area* in any one of such towns during all times when such town shall have in force and applicable to such property a duly adopted, valid zoning bylaw approved by the Secretary in accordance with the provisions of section 459b–4 of this title.

16 U.S.C. § 459b–3(b) (1982) (emphasis added).

Under the Act, "improved property" is defined as:

a *detached, one-family dwelling* the construction of which was begun before September 1, 1959 ... together with so much of the land on which the dwelling is situated, the said land being in the same ownership as the dwelling, as the Secretary shall designate to be reasonably necessary for the enjoyment of the dwelling for the sole purpose of noncommercial residential use, together with any structures accessory to the dwelling which are situated on the land so designated. The amount of the land so designated shall in every case be at least three acres in area, or all of such lesser amount as may be held in the same ownership as the dwelling....

16 U.S.C. § 459b–3(d) (emphasis added).

As we stated in our decision in *United States v. 7.92 Acres of Land (I)*, 769 F.2d 4, 8 (1st Cir.1985), there is "no doubt that the 'improved property' exemption of the Act has been designed and interpreted to prevent the eviction of bona fide or actual *homeowners* from established residences, thereby accommodating 'the legitimate interests of existing residents.'" (quoting S.Rep. No. 428, 87th Cong., 1st Sess., *reprinted in* 1961 U.S.Code Cong. & Admin. News 2212, 2220) (emphasis in original).

In the present case the Town of Provincetown has enacted zoning ordinances approved by the Secretary. Consequently, in determining whether Bessay's cottage qualified for the "improved property" exemption, the district court had to decide whether the cottage was a "detached, one-

family dwelling" within the statutory definition. The district court held that the cottage did not qualify for the exemption.

Bessay, in her brief, contends that the "plain language of the Act mandates that [the cottage] be classified as a dwelling entitled to improved property status." In her reply brief she further argues that "[t]he Department improperly urges the [c]ourt to employ a theory of statutory interpretation that ignores the plain and ordinary meaning of the word 'dwelling.'" We disagree.

The nature and purpose of the Act, as well as the meaning of "dwelling," is not new to this court. In *7.92 Acres of Land (I)*, Bessay acquired two tracts of land in 1963 where there existed the remains of a structure that had been built in the 1930's. Bessay stated that, after 1959, but prior to 1963, the structure was partially burned. Sometime after 1963, the remaining portion of the structure was also burned. Bessay claimed that "since there [was] evidence that a 'dwelling' existed on her land prior to 1959, she ha[d] 'rebuilding rights,' and, therefore, [was] entitled to an exemption from condemnation [as 'improved property'] under section 459b–3 of the Act." *7.92 Acres of Land (I)*, 769 F.2d at 7.

We held that "[s]ince there was no dwelling on Bessay's land at the time of the taking, and the land [was] unbuildable, ... [Bessay] ha[d] no rebuilding rights...." *Id.* at 9. In addition, we noted that:

[T]he structure ... was never served by utilities, had no waste disposal facilities, and permits for such services or facilities were never obtained or issued. Clearly, the legislative history and the case law interpreting the Act reveal that Congress did not intend to include within the definition of "improved property" the kind of structure which may have existed on Bessay's land.

*Id.* at 8; *see generally* P. Rohan & M. Reskin, *Condemnation Procedures & Techniques* § 14.04[4] (Supp.1988).

In *United States v. 7.92 Acres of Land (II)*, No. 86–1825, slip op. at 2 (1st Cir. Aug. 31, 1987) [831 F.2d 281 (table)], *cert. denied*, 484 U.S. 1011, 108 S.Ct. 711, 98

L.Ed.2d 661 (1988), the structure in question "consisted of a ten by ten foot shack. It contained no plumbing, no electricity, no septic system and no foundation." (citations omitted). The structure contained a "chemical toilet [and] a primer stove." *Id.* Bessay stated that she "used rain water for washing and brought in fresh water for drinking." *Id.* In 1972, Bessay applied to the National Park Service for a Certificate of Suspension from condemnation on the ground that her property was "improved property" within the meaning of the Act. Her application was denied by the Department, and the district court held that the property was not "improved." *See United States v. 7.92 Acres of Land (II)*, No. 75–3546–C, slip op. at 6 (D.Mass. Mar. 31, 1982). In affirming, we noted that, in light of our discussion of "improved property" in *7.92 Acres of Land (I)*, and because of the lack of "permits for utility service or waste disposal," it was evident that "Bessay's property was not improved so as to suspend the Secretary's condemnation powers." *7.92 Acres of Land (II)*, No. 86–1825, slip op. at 2–3.

The structure in the present case, which is referred to by Bessay as a "cottage," consists of a two room wooden structure, eighteen and-a-half by sixteen-and-a-half feet, with a five foot wide porch along its length, on a foundation of wooden posts or pilings imbedded in the sand. The cottage has no plumbing, no electricity, no insulation, no built-in waste disposal or bathing facilities. It is lighted by kerosene lamps, and, is serviced by gas appliances, a water pump located approximately 200 feet east of the structure, and a portable chemical toilet.

It cannot be questioned that, guided by what we have said in our prior cases, Bessay's cottage is not a "dwelling." Bessay, nonetheless, claims that the cottage at issue in this case differs from the structures that we examined in the prior cases. In her reply brief, she argues that, unlike the structure in *7.92 Acres of Land (I)*, where "there was no existing structure on the property, at the time of the taking, and the land was unbuildable because it was a coastal bank," here her cottage "has been located on the property at all times relevant to this appeal" and "has been inhabited continuously during the warmer months...." Furthermore, she adds that this case differs from the one in *7.92 Acres of Land (II)* because in this case her "house and its foundation are significantly larger and more durable than those in [*7.92 Acres of Land (II)*]" and "[e]lectric utilities, have never been available at [this] site, whereas they were available at the ... site [in *7.92 Acres of Land (II)*]."

In our present inquiry it is noteworthy that the district court found that "[p]rior to trial, Bessay herself agreed that the structures in the present case and in *United States v. 7.92 Acres of Land (II)* ... were substantially similar." *Certain Land Located in the County of Barnstable*, No. 67–988–N, slip op. at 7. Our examination of the record also confirms that, in a "Joint Status Report" prepared before trial, Bessay did "agree that the structures in the present case and in [*7.92 Acres of Land (II)*] are substantially similar." Hence, notwithstanding the distinctions that are stressed by Bessay on this appeal, the district court was correct in concluding that the distinctions "are insufficient to convert the cottage into 'improved property.'" *Id.* Furthermore, from the description of the cottage and from what we said in our prior cases, it is clear that "Congress did not intend to include within the definition of 'improved property' the kind of structure which ... existed [here]." *See 7.92 Acres of Land (I)*, 769 F.2d at 8.

Notwithstanding the explanations offered at the trial and in Bessay's appellate briefs, it is crystal clear that, without electricity and plumbing, the cottage did not meet the Minimum Standards of Fitness for Human Habitation promulgated by the Massachusetts Department of Public Health on March 8, 1955, and the Provincetown Health Department Regulations adopted on July 15, 1957.

The Provincetown Health Department Regulations require approved septic systems, piped in water supply and an adequate number of "water closets, lavatories, bathtubs or showers...." The Regula-

tions also state that "[e]very kitchen sink, lavatory and bathtub or shower ... *shall* be properly connected to both hot and cold water lines." (emphasis in original). Additionally, the Massachusetts Minimum Standards of Fitness for Human Habitation require "a kitchen sink in good working condition and properly connected to water and sewer systems ... [and] [w]here connection ... is not practicable, a dwelling shall be served by cesspools, septic tanks or other means of subsurface disposal of sewage...."

At the trial, both Bessay and her witness, Peter Clemons, acknowledged that there are no pipes which connect a water supply to the cottage, that the kitchen sink is not connected to the water, that there is no bathtub or shower, and that there are no water heating facilities in the cottage. *See* Record at 60–61, 112, 116, *Certain Land Located in the County of Barnstable* (No. 67–988–N). Hence, Bessay's contention that the cottage meets the criteria set forth in the Massachusetts Minimum Standards of Fitness for Human Habitation is contradicted by the facts and the trial testimony.

■ In her reply brief, as an alternative argument, Bessay contends that the Department "incorrectly asserts that a structure must meet standards found in local and state *health* laws in order to be considered a 'dwelling'...." (emphasis in original). According to Bessay, "[t]he Act merely provides that the Department shall issue regulations specifying standards for approval by the Department of a town's zoning bylaws." She asserts that "[t]he Provincetown Zoning Bylaw ... does not make any mention of local or state *health* statutes...." (emphasis in original).

The Act provides that the authority of the Secretary to acquire property by condemnation shall be suspended as to all improved property "when such town shall have in force and applicable to such property a ... valid zoning bylaw approved by the Secretary...." 16 U.S.C. § 459b–3(b)(2). This provision, which suspends the Secretary's power to condemn improved property during the existence of a valid zoning bylaw, was enacted because "Congress could not enact local zoning ordinances to avoid condemnation...." *7.92 Acres of Land (I)*, 769 F.2d at 8. The legislative history of the Act acknowledges that:

> If the Federal Government ... is to establish a national seashore in such a way as not to interfere with the continued ownership and enjoyment of ... property by private landowners ..., it is only reasonable that the communities involved adopt zoning laws which will assure that the property within the seashore will be used in a manner consistent with the purposes of the seashore.

S.Rep. No. 428, 87th Cong., 1st Sess., *reprinted in* 1961 U.S.Code Cong. & Admin. News 2212, 2235. "Once such a bylaw is approved [by the Secretary], the Secretary becomes powerless to condemn improved property within that town[ ] ... as long as that improved property is put to a use consistent with the bylaw." *United States v. Certain Lands in Truro*, 476 F.Supp. 1031, 1033 (D.Mass.1979).

Prior case law had defined "improved property" consistently with the requirements of state and local law. It is not unreasonable, therefore, to look to this criteria when examining the cottage. Furthermore, as stated by the district court in *United States v. 7.92 Acres of Land (II)*, "[w]hether a particular structure conforms with existing state health laws is pertinent, objective evidence with respect to its legal status as a dwelling." No. 75–3546–C, slip op. at 6.

### CONCLUSION

In agreement with our prior decisions as to the nature and purpose of the Act, and the findings and conclusions of the district court, we hold that the structure that is the subject of this litigation is not "improved property" within the meaning of the Cape Cod National Seashore Act.

Since we agree with the district court that Bessay's "cottage does not qualify as a one-family dwelling," and, therefore, is not exempt from condemnation as "improved property," we need not decide

whether the land and building were in the same ownership in September of 1959. Therefore, the judgment of the district court is affirmed.